IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ROSEANN SLATTERY, JOSEPHINE ESTRADA and ELIZABETH THIELE,

Plaintiffs,

v.

DOUGLAS COUNTY, NEBRASKA,

Defendant.

8:10CV319

MEMORANDUM AND ORDER

This matter is before the court on the parties' cross-motions for summary judgment, Filing Nos. 55 and 60. This is an action for age and gender discrimination in employment under 42 U.S.C. § 2000e ("Title VII") and 29 U.S.C. § 621 *et seq*. ("ADEA"), and for violations of the Federal and Nebraska Equal Pay Acts, 29 U.S.C. § 206 *et seq*. ("EPA"), and Neb. Rev. Stat. § 48-1219 ("NEPA"). The plaintiffs are female registered nurses over the age of forty employed by defendant Douglas County, Nebraska ("the County"). They assert that they are not paid as much as their male counterparts and have been subjected to disparate treatment and disparate impact by reason of their age and gender. Plaintiffs seek back pay and restoration of benefits from the County as a result of unlawful discrimination.

## I. FACTS

The following uncontroverted facts are gleaned from the statements of fact in the parties' respective briefs. *See* Filing No. 56, Plaintiffs' Brief at 1-7; Filing No. 61, Defendant's Brief at 1-5; Filing No. 65, Defendant's Brief in Opposition at 1-3; Filing No. 67, Plaintiffs' Brief in Opposition at 4-7; Filing No. 76, Defendant's Reply Brief at 3. Defendant Douglas County is a political subdivision of the State of Nebraska and is an

employer within the meaning of Title VII, the Equal Pay Act, the ADEA and NEPA. The plaintiffs are females and are "employees" of the defendant within the meaning of the statutes at issue. The plaintiffs are Registered Nurses who were employed by Defendant Douglas County in the Health Department. During the relevant time period, the plaintiffs were all members of the Health Department Employees Association ("HDEA"), which is plaintiffs' exclusive bargaining agent for purposes of wages and benefits.

Plaintiff Roseann Slattery was hired as a part-time Community Health Educator in December 1989, and a full-time Community Health Educator after approximately six months. After approximately three years, Slattery became the Epidemiologist and then was a Nurse Epidemiologist. She was employed by the County as a Nurse Epidemiologist, until she retired on July 27, 2009.

In January 2000, Josephine Estrada was hired by the County as the STD Coordinator. After a few months, Estrada became the Child Care consultant. She was then employed for a few months as a Public Health Nurse, at which time she became a Nurse Epidemiologist. Estrada was a Nurse Epidemiologist until she retired on April 1, 2011.

Plaintiff Elizabeth Thiele was hired as a nurse at the County's long-term care facility at 42nd and Woolworth in April 1993. On December 26, 2000, Thiele was employed by the County as a Clinic Coordinator in the Health Department, until she retired on October 31, 2010.

For collective bargaining purposes, the Nurse Epidemiologist position is in the Public Health Nurse IV category. Prior to the 2004-06 collective bargaining agreement, the Nurse Epidemiologist's position was included in the Program Specialist IV category. Two-thirds of the Nurse Epidemiologist job is performed out of the office seeing patients, and one-third

of the job is performed in the office. At the request of nurses, the pay line for Public Health Nurse IV was created. The job description did not change, and it was on the same pay line as Program Specialist IV category. For the 2004-06 collective bargaining agreement, the parties agreed that the employees in the Program Specialist IV category would be paid the same as those in the Public Health Nurse IV category.

Douglas County and HDEA approved a collective bargaining agreement on April 26, 2005, covering July 1, 2004, through December 31, 2006. In Article 26 of this Agreement, the jobs of Nurse Epidemiologist and Clinic Coordinator were included with the job of Assistant Supervisor, Access Medicaid in the classification of Public Health Nurse IV. In the same Article of that Agreement, the job of Epidemiologist I was included with five other jobs in the classification of Program Specialist III. There is a Douglas County job description for Epidemiologist I. It is a job performed primarily in the office. Douglas County and the HDEA approved a Collective Bargaining Agreement on March 24, 2009, to cover January 1, 2007, through December 31, 2009.

In Article 28 of this Agreement, covering Wages, the Clinic Coordinator and Nurse Epidemiologist jobs remain in the Public Health Nurse IV classification, but Assistant Supervisor, Access Medicaid was removed because the job no longer existed. In the same Article of the 2009 Agreement, the job of Epidemiologist I remained in the Program Specialist III classification with the same five jobs as in the 2005 Agreement. In 2009, two men younger than the plaintiffs were working as an Epidemiologist I for the Douglas County Health Department.

In 2009, plaintiff Slattery was the vice president of the HDEA. In 2008 and 2009, plaintiff Estrada was chair of the HDEA Negotiating Committee for the purposes of negotiating the collective bargaining agreement with Douglas County. Douglas County pays non-supervisory employees of the Health Department according to the terms of the

Agreement with the HDEA which is negotiated periodically. The pay table for each classification of jobs is established by negotiation between the County and the HDEA, or in the event of no agreement, by the Commission of Industrial Relations of the State of Nebraska.

Douglas County hired Britteny Ferrin, a wage and benefit consultant, to provide a survey of wage and benefit data from comparable county governments that had jobs similar to those in the HDEA bargaining unit. The HDEA hired Dr. Robert Otteman to provide the same survey. Dr. Otteman and Ms. Ferrin conferred throughout 2008 and 2009 in order to agree to an array of pay rates for comparable jobs, and they prepared a comparison report on January 8, 2009, which displayed the comparator county, the particular job title, and for those counties which had a matching job, the difference between the County's pay rate and that of the comparator county. The HDEA Negotiating Committee met and considered a counterproposal from the County and voted 3-2 to present the wage proposal to the HDEA membership which, after contentious discussion, voted in the majority to accept the final proposal. The County voted to accept the negotiated Collective Bargaining Agreement on March 24, 2009.

The employees who are employed in the Public Health Nurse IV category are all females. The Nurse Epidemiologist position is in the Public Health Nurse IV category and the Epidemiologist I position is in the Program Specialist III category. The Epidemiologist II position is in the Program Specialist IV category. The employees who are employed in the Public Health Nurse IV category are all females. The employees who are employed in the Epidemiologist I position were all men. There are 15 total employees in the Program Specialist III category, only three of which are women. All of the plaintiffs are over the age of fifty-nine. The employees in the Epidemiologist I position were 40 or under at the time they were hired.

Plaintiffs move for summary judgment on their disparate impact claims under Title VII and the Equal Pay Act, arguing that undisputed evidence establishes that defendant's pay practices had a disparate impact upon them and shows a causal connection between their gender and the disparate pay. Further, they argue that the defendant cannot demonstrate a business necessity defense.

The defendant moves for summary judgment on all of the plaintiffs' claims.[1] It argues that undisputed evidence shows that the plaintiffs cannot prove that their jobs (Nurse Epidemiologist and Clinic Coordinator) were substantially similar enough to the job of Epidemiologist I. It acknowledges that there are some questions of fact concerning the jobs of Nurse Epidemiologist and Epidemiologist I, but they are immaterial and inconsequential. The defendant agues that the plaintiffs cannot prevail on the Equal Pay Act claims or the gender and age discrimination claims as a result of that failure of proof. The defendant further agues that its rationale for the wage package that was agreed to by the County and the Union that represents the plaintiffs is a defense to all eight claims. Additionally, the defendant contends that its "offer to move the money around among the various jobs covered by the contract" legally negates the plaintiffs' claim that there was another way to present a wage package without violating laws, since the offer to rearrange the pay raises was not accepted by the Union.

## II. LAW

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there

[1]The plaintiffs' claims are: violation of the Equal Pay Act - disparate treatment (Count I), violation of the Equal Pay Act - disparate impact (Count II), violation of Title VII - disparate treatment (Count III), violation of Title VII - disparate impact (Count IV); violation of the Age Discrimination in Employment Act - disparate treatment (Count V), violation of the Age Discrimination in Employment Act - disparate impact (Count VI), violation of the Nebraska Equal Pay Act - disparate treatment (Count VII) and violation of the Nebraska Equal Pay Act - disparate impact.

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir.2005). "Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. June 1, 2011) (*en banc*) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). On a motion for summary judgment, the "'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, —, 129 S. Ct. 2658, 2677 (2009)). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Id.* The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id.*

There is no "discrimination case exception" to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial. *Torgerson*, 643 F.3d at 1043 (quoting *Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)). Nevertheless, "[a]t the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). The court's function is to determine whether a dispute about a material fact is genuine, that is, whether a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.* at 248. To be material, a fact "must affect the outcome of the lawsuit under governing law." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's favor]." *Id.* at 255. "If reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Id.* at 250.

Since the plaintiffs' allegations relate solely to unequal pay for equal work, their Title VII claim is governed by the standards of the Equal Pay Act (EPA), 29 U.S.C. § 206(d). *Drum v. Leeson Elec. Corp.*, 565 F.3d 1071, 1072 (8th Cir. 2009). In order to establish a prima facie case under the EPA, an employee must prove an employer paid different wages to men and women performing equal work. *Id.* The burden of proof then shifts to the employer to prove a statutory affirmative defense. *Id.* Those defenses are: (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality of production; or (4) a differential based on any other factor other than sex. *Id.*; 29 U.S.C. § 206(d)(1). Under the Equal Pay Act, "'a defendant cannot escape liability merely by articulating a legitimate non-discriminatory reason for the employment action.'" *Id.*

(quoting *Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 579 (8th Cir. 2006). The defendant must prove that the pay differential was based on a factor other than sex. *Id.*

"Equal work" is defined as work "'on jobs the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions.'" *Id.* (quoting 29 U.S.C. § 206(d)(1)). "It should be kept in mind that 'equal' does not mean 'identical.' Insubstantial or minor differences in the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable." 29 C.F.R. § 1620.14(a). The correct focus of an Equal Pay analysis is on the actual requirements and performance of the jobs in question. *Younts v. Fremont Cnty, Iowa*, 370 F.3d 748, 753 (8th Cir. 2004); *see also* *Beck-Wilson v. Principi*, 441 F.3d 353, 362 (6th Cir. 2006) (noting the focus is on actual job requirements and duties, rather than job classifications or titles). Whether two positions are substantially equal under the EPA is typically a question of fact for the jury. *Id.* at 363.

In order to prove a prima face case for age discrimination, plaintiffs must demonstrate that 1) they were members of the protected class; 2) they were performing their jobs at a level that met defendant's legitimate expectations; 3) they were subject to an adverse employment action; and 4) there is some additional evidence that age was a factor in the employer's decision. *Rahlf v. Mo-Tech Corp.*, 642 F.3d 633, 637 (8th Cir. 2011). Pretext may be shown with evidence that the employer's reason for the adverse employment decision has changed substantially over time. *Jones v. Nat'l Am. Univ.*, 608 F.3d 1039, 1046 (8th Cir. 2010).

In a disparate impact age discrimination claim, the ADEA's general prohibitions against age discrimination are subject to a separate provision, creating exemptions for employer practices otherwise prohibited under the statute "where age is a bona fide

occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age. . . ." 29 U.S.C. § 623(f)(1). The reasonable factors other than age ("RFOA") exemption is an affirmative defense for which the burden of persuasion falls on the employer. *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 93 (2008). The focus of the defense is that the factor relied upon was a "reasonable" one for the employer to be using. *Id.* at 96.

**III. DISCUSSION**

The court has reviewed the evidence in support of and opposition to the motions and finds there are genuine issues of material fact that preclude summary judgment in this case. The parties have submitted numerous conflicting affidavits and contradictory deposition testimony. *See, e.g.*, Filing Nos. 57, 58, 59, 62, 66, 68, 75, and 77, Indices of Evid.

The court finds there are genuine issues of material fact with respect to the critical question of whether the plaintiffs' positions were equal to the jobs of the substantially younger men who were paid more than the plaintiffs were paid. Further, there is an issue of fact with respect to whether the defendant's proffered legitimate, non-discriminatory reason for the pay disparity—the wage comparability studies—are a pretext for age and/or gender discrimination. Evidence suggests that the defendant did not rely on its wage study in determining appropriate raises. There are discrepancies in testimony with respect to the rationale for giving young men a 17% raise, while giving women over fifty-nine a 6% raise.

There is also evidence that the defendant did not uniformly apply the wage-study formula. Resolution of those issues will involve assessments of credibility. The evidence shows the defendant has provided varying reasons for the pay disparity at different times. There are factual issues with respect to the justification for the pay differential. The

evidence also shows that job descriptions were modified subsequent to the filing of this action. Further, defendant's reliance on the wage studies to satisfy its burden that the pay disparities are based on a "factor other than age" is similarly unavailing. The defendant has not sustained its burden with respect to the defense. There remain genuine issues of fact with respect to the reasonableness of the defendant's reliance on the studies. Accordingly,

IT IS ORDERED:

1. Defendant's motion for summary judgment is (Filing No. 60) is denied.
2. Plaintiffs' motion for summary judgment (Filing No. 55) is denied.

DATED this 15th day of March, 2012.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.